1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES L. DAVIS, | CASE NO. 1:06-cv-01216-AWI-SMS PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| RAMEN, et al., | (ECF Nos. 95, 97, 99, 102, 103, 104) |
| Defendants. | OBJECTIONS DUE WITHIN THIRTY DAYS |
| _____/ | |

**I.   Procedural History**

Plaintiff James L. Davis ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding on the third amended complaint, filed August 21, 2008, against Defendants Raman, Rangel, Solis, and Johnson for deliberate indifference to serious medical needs in violation of the Eighth Amendment rights.  Defendants filed a motion for summary judgment on January 7, 2011, and an exhibit for their statement of undisputed facts on January 11, 2011.  (ECF Nos. 95, 97.)  Plaintiff filed an opposition on February 4, 2011.[1]  (ECF No. 99.)  Defendants filed a reply and objections[2] on February 24, 2011.  (ECF Nos. 102, 103.)  Plaintiff filed a surreply on March 10, 2011.  (ECF No. 105.)  Defendants filed a motion to strike Plaintiff's surreply on March 18, 2011, and Plaintiff filed a motion to strike

---

[1]Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the second informational order filed May 27, 2009.  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  (ECF No. 39.)

[2]The Court reviewed Defendants' objections.  The Court declines to strike portions of Plaintiff's declaration and select exhibits.  However, evidence submitted by Plaintiff that is not admissible was not considered.

Defendants' reply on March 31, 2011.  (ECF Nos. 107, 109.)  Plaintiff filed a motion to file a surreply on April 18, 2011.[3]  (ECF No. 110.)

## II.   Summary Judgment Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Summary judgment must be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, the court is to liberally construe the filings and motions of pro se litigants.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010.)  The "party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323 (quoting Rule 56(c) of the Federal Rules of Civil Procedure).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.

The parties bear the burden of supporting their motions and oppositions with the papers they wish the Court to consider and/or by specifically referencing any other portions of the record for consideration.  Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  The Court will not undertake to mine the record for triable issues of fact.  Simmons v. Navajo

---

[3]The Court has addressed Plaintiff's surreply and the corresponding motions by separate order.

1  County, Arizona, 609 F.3d 1011, 1017 (9th Cir. 2010)

2  **III.    Plaintiff's Allegations**

3      Plaintiff claims that he tested HIV positive in 1997 and was placed on the medication

4  Viracept and Combivir.  On December 7, 2005, Plaintiff was transferred to Corcoran State Prison

5  and had a thirty day supply of his medication.  On December 22, 2005, Plaintiff was ill and did not

6  go to get his medication.  The next day Defendants Solis and Johnson wrote an order to stop his

7  medication.  Two weeks later he was seen by Defendant Raman who did not reinstate his medication.

8  (Third Amend. Compl. 5, ECF No. 32.)  Defendant Ramen offered Plaintiff a different medication

9  for his HIV.  (Id. at 6.)

10     Plaintiff also claims that he has been an insulin dependent diabetic for nine years.  Upon

11  arriving at Corcoran, Defendant Raman changed his medication and placed him on pills to control

12  his diabetes, with insulin as a backup when his blood sugar rises above 150.  Since being placed on

13  pills, his blood sugar has been high.  (Id. at 7.)

14     Defendant Raman invalidated his medical chrono and Defendant Rangel took away his soft

15  shoes because the medical chrono was no longer valid.  (Id. at 8.)

16  **IV.    Undisputed Facts**

17     1.     Plaintiff is a prisoner currently incarcerated at California State Prison, Sacramento

18            (CSP-Sacramento).

19     2.     Plaintiff was diagnosed as diabetic and HIV-positive in 1997.[4]

20     3.     Plaintiff has been incarcerated for the last thirteen years, and has been housed at

21            various institutions.

22     4.     From 2000 to 2005, Plaintiff was housed at California Medical Facility (CMF),

23            where he continued to take daily doses of Viracept and Combivir, and other

24            medications unrelated to his HIV-positive status.[5]

25     5.     At CMF, Plaintiff received his Viracept and Combivir in a "bag" format, and he took

26

27     [4]Plaintiff disputes this fact, however in his third amended complaint he alleges that he was diagnosed with
   HIV and diabetes in 1997.

28     [5]Plaintiff disputes this, as he alleges that Gabapentin is related to his HIV and diabetes.

his pills in the morning at breakfast and again at nighttime after dinner.[6]

6.    On or around December 7, 2005, Plaintiff was transferred to CSP-Corcoran, with a thirty-day supply of Combivir and Viracept, as well as Enalapril (for high blood pressure), and insulin, prescribed by Dr. Aguilar at CMF.

7.    Plaintiff's medication was taken by Receiving and Release ("R&R") officers at CSP-Corcoran upon his arrival.[7]

8.    After Plaintiff was processed by R&R, he was given an initial medical evaluation by CSP-Corcoran medical staff on December 8, 2005.[8]

9.    Plaintiff was seen by Defendant Raman on December 13, 2005. As is widely accepted in the medical community, irrespective of any existing orders from another physician, Defendant Raman examined Plaintiff and made an independent determination as to the proper medical treatment and medications.[9]

10.    Defendant Raman conducted a "Human Immunodeficiency Virus Chronic Care Intake Evaluation" (CDC Form 7398) on Plaintiff, and elected to continue him on Combivir and Nelfinavir (another name for Viracept).[10]

11.    Defendant Raman ordered a 180-day prescription for Combivir and Nelfinavir to be taken orally twice a day during the "med lines" (also referred to as "pill lines") conducted by the nursing staff at each of the housing buildings.[11]

---

[6] Plaintiff disputes that he took pills solely at night because night is not always between 5:00 and 6:30 p.m.

[7] Plaintiff disputes this fact because his medication was taken by correctional officers and given to nursing correctional officers.

[8] Plaintiff disputes this fact and asserts that submitting false medical records is a federal offense.

[9] Plaintiff disputes that he was seen on December 13, 2005 and that paperwork was completed in his presence or that he was seen upon arrival, because he did not see Defendant Raman before then. However in his deposition Plaintiff stated that he saw Defendant Raman and medication was ordered for him between his arrival at CSP-Corcoran on December 7, 2005 and December 22, 2005, but Plaintiff did not remember the date. (Depo. 10, ECF No. 97.) A party cannot create an issue of fact by contradicting his own admissions. See Cleveland v. Policy Mgmt Sys. Corp., 526 U.S. 795, 806 (1999).

[10] Plaintiff disputes this fact without stating a reason.

[11] Plaintiff disputes this fact because Defendant Raman did not order any prescription in his presence and did not tell him that the medication had been ordered until after the medication had been taken away.

12.     CDCR requires that inmates, at a minimum, reach 93% prescription medication compliance.[12]

13.     In particular, HIV medications can build up a resistance in the body if they are not taken exactly as prescribed, and will cause serious medical complications for an individual who is HIV-positive.[13]

14.     For this reason, Combivir and Nelfinavir must be consumed by the inmate in front of the nursing staff during the med lines, to ensure that the patient actually ingests the medication and doesn't hide it for later use, sale/trade, or other improper purpose.[14]

15.     If an inmate refuses to take his medication as prescribed during the "med lines," the nursing staff completes a "Refusal of Examination and/or Treatment" (CDC 7225) form to document the situation, asks the inmate to sign the form, and if he refuses to do so, marks it on the form along with a witness signature.[15]

16.     The "Refusal of Examination and/or Treatment" form is then forwarded to physician staff for further handling, such as modification or discontinuation of the inmate's prescription medication as necessary.[16]

17.     During Plaintiff's December 13, 2005 visit, Defendant Raman also: (1) prescribed Enalapril for high blood pressure; (2) discontinued insulin and prescribed Metformin and Glyburide to treat Plaintiff's diabetes; (3) prescribed a nourishment packet (food supplement); (4) ordered blood and lab tests; (5) referred Plaintiff for a dietitian consult; and (6) referred Plaintiff to the eye clinic for a diabetic check.[17]

---

[12] Plaintiff disputes this fact because any policy that conflicts with the Fifth, Eighth, or Fourteenth Amendment is void.

[13] Plaintiff disputes this fact as he has never been resistant to medication and Defendants have produced no evidence that he is resistant to any medication.

[14] Plaintiff disputes this fact alleging it is manufactured to deceive the court.

[15] Plaintiff disputes this fact because he was never asked to sign a form.

[16] Plaintiff disputes that this ever happened.

[17] Plaintiff disputes that he ever saw Defendant Raman on December 13, 2005, and the Glyburide was ordered for him by Dr. Norris at CSP, not by Defendant Raman.

18. On or around December 22, 2005, Plaintiff claims he felt ill and was unable to go to the morning med line for his medication.[18]

19. Plaintiff claims that on December 23, 2005, he asked Defendant Johnson at the yard clinic window for his medication, and Defendant Johnson told him that the medication had been discontinued.[19]

20. In December, 2005, HIV-positive inmates such as Plaintiff were treated by a specific Chronic Infectious Disease (CID) unit at CSP-Corcoran.[20]

21. Medication for HIV-positive inmates were managed and distributed by both Licensed Vocational Nurses and Registered Nurses in the CID unit.[21]

22. Defendant Johnson worked as a yard nurse at CSP-Corcoran in December, 2005, in an office in the back of one of the general nursing clinics located on the different housing yards.[22]

23. Because Defendant Johnson did not work in the CID unit in December, 2005, she was not responsible for, and could not dispense, HIV medication for inmates such as Plaintiff.[23]

24. Defendant Johnson could not dispense medication to Plaintiff if he approached her

[18]Plaintiff disputes this fact, however, in the documents he cites, he states that he did not go to get his medication on December 22, 2005, because he did not go to get them because he was ill. (See Third Amend. Comp. at p. 5, ECF No. 34.)

[19]Plaintiff disputes this fact because there is not a window. HIV inmates have to go inside the building to get their medication.

[20]Plaintiff disputes this fact because HIV inmates have their own clinic and have to go inside the building for treatment.

[21]Plaintiff disputes this fact because the nurses are given an oath as a correctional officer as part of their contract of employment.

[22]Plaintiff disputes this fact stating that Defendant Johnson was assigned only to the HIV clinic and was there almost every day during the two years he was housed there.

[23]Plaintiff disputes this alleging that Defendant Johnson worked every day he attended the clinic.

6

1    at the clinic window on the yard and demanded his medications.[24]

2    25.    Based on Defendant Johnson's usual custom and practice, if an inmate such as
3           Plaintiff had not taken his prescribed medication the day before, Defendant Johnson
4           anticipated that his medication would need to be re-evaluated by the physicians.[25]

5    26.    Nursing staff must notify the appropriate physician if and when an inmate refuses his
6           prescribed medication, such as was the situation with Plaintiff.[26]

7    27.    Defendants Solis and Johnson could not override a physician's order and continue
8           to dispense medication to Plaintiff that had been discontinued due to Plaintiff's non-
9           compliance with the medication schedule.[27]

10   28.    Defendant Solis noted on December 27, 2005, in a "Refusal of Examination and/or
11          Treatment" (CDC 7225) form, that Combivir and Nelfinavir were discontinued
12          because Plaintiff stated "I only take medication in the morning."[28]

13   29.    Defendant Solis informed Plaintiff that his HIV medication was prescribed to be taken
14          twice a day, and that if the medication was not taken correctly, they may be stopped
15          due to resistance. This form was witnessed and signed by Nurse S. Searcy.[29]

16   30.    On December 27, 2005, a Physician Order (CDC 7221 form) was completed by
17          Defendant Solis at Dr. Reynold's direction, to discontinue Plaintiff's Combivir and

18   _____

19   [24]Plaintiff disputes this fact since there was no window for HIV inmates to receive medication. The HIV
20   inmates received their medication in the housing building or inside the HIV clinic. On December 23, 2005, Plainitff
     asked Defendant Johnson for his medication in the HIV clinic.

21      [25]Plaintiff disputes this fact because the Fifth, Eighth, and Fourteenth Amendments do not allow deliberate
22   indifference to serious medical needs.

23      [26]Plaintiff disputes this fact because there was no order to stop his medication until December 27, 2005, and
     he was refused medication on December 23, 2005.

24      [27]Plaintiff disputes this fact since Defendants refused to dispense his medication on December 23, 2005.

25      [28]Plaintiff disputes that he ever made the statement that he only took his medication in the morning and he
26   did not refuse an examination on December 27, 2005. Plaintiff objects to this statement as hearsay. However,
     Plaintiff's statement offered by a party opponent is not hearsay. Fed. R. Evid. 801(d)(2). Plaintiff's objection is
27   overruled.

28      [29]Plaintiff disputes that he was ever informed that his medication would be stopped if he failed to take his
     medication as prescribed and asserts this is a false document.

Nelfinavir, and for Plaintiff to follow up with the yard physician the following week for HIV medication evaluation.[30]

31.   On January 5, 2006, Plaintiff was evaluated by Defendant Raman.  Defendant Raman noted in his "Outpatient Interdisciplinary Progress Notes" (CDC 7254 form), that Plaintiff claimed he had been taking his HIV medications once daily for several years, and that he insisted on taking it once daily.[31]

32.   Because Plaintiff's blood test and lab results were pending, Defendant Raman decided to reevaluate Plaintiff at a later time to determine the appropriate course of medical care for his HIV, including HAART (Highly Active Antiretroviral Therapy). Medication such as Combivir and Nelfinavir is one type of HAART.[32]

33.   On March 9, 2006, Plaintiff was evaluated for a Chronic Care Follow-Up Visit (CDC 7402 form), in which Plaintiff once again reiterated that he wanted to take the Combivir and Nelfinavir dose once daily, and he refused to go to the eye clinic.[33]

34.   On July 26, 2006, Plaintiff returned to see Defendant Raman for follow-up. Plaintiff stated his wish to start on Nelfinavir and other HAART, but once again, insisted he wanted to take it only once a day.[34]

35.   Defendant Raman explained again the need for Plaintiff to take his HIV medication twice a day, and because of Plaintiff's refusal to do so, denied Plaintiff's request.

36.   On October 3, 2006, Plaintiff returned to see Defendant Raman for treatment of a sore

[30]Plaintiff disputes this fact because Defendant Solis stated that the medication was discontinued in accordance with Defendant Reynold's and Raman's orders.

[31]Plaintiff disputes that he ever made a statement to anyone that he only took his medication once per day.

[32]Plaintiff objects to this fact because no document was submitted as evidence that a blood test was ordered, therefore the statement is hearsay.  "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  Here Defendant's declaration is not a statement offered to prove the truth of the matter, but is his testimony as to his state of mind at the time he treated Plaintiff.  Therefore, Plaintiff's objection is overruled.

[33]Plaintiff disputes that he ever said he would not take the medication two times per day.

[34]Plaintiff disputes this fact.

1  in his gums.  In addition to treating the sore gum, Defendant Raman's Chronic Care

2  Progress Note also recorded that Plaintiff's finger stick blood sugars were between 100

3  and 170, and that he had not had any hypoglycemic episodes.[35]

4  37.  Significantly, lab results showed that Plaintiff's CD4 count was 689, his HIV viral load

5  was 212, and his hemoglobin A1C level was 6.4.  These diagnostic results indicated

6  that Plaintiff's HIV status had not been negatively affected by not taking the Combivir

7  and Viracept.  In addition, the metabolic panel showed a blood sugar level of 169,

8  which was medically acceptable.[36]

9  38.  On October 24, 2006, Plaintiff was seen by Defendant Raman for a routine follow-up.

10  The Chronic Care Progress Note recorded that Plaintiff had had no hypoglycemic

11  episode, and that his finger stick blood sugars had been well-controlled except on two

12  occasions when it was 233 and 181.[37]

13  39.  Notably, Plaintiff indicated his wish to start on HIV medications he had taken in the

14  past.  Defendant Raman discussed with Plaintiff the lack of need for HIV medication

15  because his CD4 count was normal, and the viral load was normal and close to being

16  undetectable.[38]

17  40.  Defendant Raman ordered a T-cell count, viral load and HIV genotype, hemoglobin

18  A1C, and urinalysis tests.  Plaintiff was to follow-up in eight weeks, and continue his

19  twice-daily finger stick blood sugar tests.

20  41.  On January 17, 2007, Plaintiff returned to Defendant Raman for follow-up, and he

---

[35]Plaintiff disputes this fact because there is no documentation to support this claim and he knows that his blood sugar was over 170 many times, sometimes between 250 to 300.  However, both Plaintiff and Defendants have submitted records of Plaintiff's blood test results.

[36]Plaintiff disputes this fact because there is no independent lab report to substantiate this claim. He objects that the evidence is hearsay.  The lab results are admissible under the business records exception to the hearsay rule, Fed. R. Evid. 803(6), and Plaintiff's objection is overruled.

[37]Plaintiff objects to this fact since Defendant fails to offer the insulin flow chart.  Defendant Raman was not present during the finger sticks and Plaintiff was and on numerous occasions his blood sugar was hypoglycemic.

[38]Plaintiff disputes this as it infers that a patient may have HIV and not receive treatment.

1       complained of constipation and excessive micturition (urination).[39]

2   42.   Although Plaintiff was noted to consume too much fluid, on his own he stopped taking

3         Enalapril because he claimed it made him urinate a lot.[40]

4   43.   Plaintiff had been checking his finger sticks but had consistently refused labs.[41]

5   44.   On further discussion with Defendant Raman, Plaintiff claimed that CDCR was

6         experimenting on him and that he wished to take HIV medications, but refused baseline

7         labs at the time.

8   45.   Plaintiff continued to refuse his ophthalmology appointment and evaluation for

9         hepatitis C, and insisted on taking his HIV medication according to his own schedule.[42]

10  46.   Defendant Raman discontinued Enalapril and prescribed fiber tablets, and ordered

11        routine labs for Plaintiff, noting that Plaintiff would likely refuse again. Plaintiff was

12        to follow-up in six weeks.[43]

13  47.   On February 28, 2007, Defendant Raman noted at Plaintiff's follow-up appointment

14        that he was doing well, and had lost about six pounds deliberately.[44]

15  48.   Plaintiff's blood stick sugars remained well-controlled between 100 and 140, and he

16        had had no hypoglycemic symptoms.[45]

---

[39]Plaintiff disputes this fact because excessive urination means that his diabetes was out of control.  Plaintiff told Defendant Raman that he did not drink a lot of water.

[40]Plaintiff disputes that he discontinued his medication.

[41]Plaintiff disputes this fact because Defendant has presented no evidence that he refused labs other than Defendant Raman's testimony.

[42]Plaintiff disputes this fact.

[43]Plaintiff disputes this fact because the Enalapril was prescribed for his high blood pressure and he had been taking the medication for years before he came to CMC-Corcoran.

[44]Plaintiff disputes that he was doing well or that he lost weight deliberately.

[45]Plaintiff disputes this fact because the diagnostic data on February 28, 2007 shows a blood sugar of 254, which is above the normal range.

1    49.    Plaintiff stated he wished to start on HAART.[46]

2    50.    Because Plaintiff had previously taken Combivir and Nelfinavir, Defendant Raman

3           prescribed Epzicom, Ritonavir and Atazanavir for Plaintiff's HAART to avoid any

4           residual medication resistance.[47]

5    51.    At Plaintiff's follow-up on April 10, 2007, Defendant Raman noted that Plaintiff had

6           again been refusing labs, and as a result, the status of control over Plaintiff's HIV status

7           on the new HAART was unknown because of his noncompliance with diagnostic

8           work-up.[48]

9    52.    Defendant Raman urged Plaintiff to have his labs drawn again, and reordered the lab

10          tests.[49]

11   53.    Plaintiff's diabetes and HIV status were well-maintained and under control at CSP-

12          Corcoran.[50]

13   54.    Plaintiff's Diabetic Flow Charts (CDC 7247 form) from 2006 through 2007, recorded

14          his glucose monitor readings and the amount of insulin administered, if necessary.[51]

15   55.    These Diabetic Flow Charts revealed that Plaintiff's glucose levels were within normal

16          ranges, and that insulin was needed only on limited occasions.[52]

17   56.    On or about March 15, 2006, Plaintiff submitted an Inmate/Parolee Appeal Form (CDC

18          602) complaining about his medical care (log no. CSP-Corcoran 06-1391). Defendant

19          Raman interviewed Plaintiff on March 20, 2006, and responded to this appeal at the

20

21   [46] Plaintiff disputes this fact stating he has never heard of HAART, he asked to continue his medication.

22   [47] Plaintiff disputes this fact since he has never been resistant to any medication.

23   [48] Plaintiff disputes this fact since there is no refusal signed by him.

24   [49] Plaintiff disputes this fact.

25   [50] Plaintiff disputes this fact because no independent lab tests were conducted.

26   [51] Plaintiff disputes this fact as his diabetic flow charts show that different initials are on the document
     although all the handwriting is the same and 80% of the tests were above normal.

27   [52] Plaintiff disputes this fact stating that he needed insulin everyday and it was not provided.

28

1    First Level of Review on April 7, 2006.[53]

2    57.    Defendant Raman reinstated Plaintiff's daily finger stick at his request, and noted that

3           Plaintiff's chrono for a soft shoe was denied by his supervisor, CSP-Corcoran Chief

4           Medical Officer V. Sanchez, M.D., on February 9, 2006. In addition, Plaintiff's chrono

5           for a lower bunk/tier was refused because he was able to ambulate and climb without

6           any difficulty. Plaintiff appealed to the Second Level of Review.[54]

7    58.    On May 10, 2006, Dr. Sanchez provided the Second Level of Review response, noting

8           that Plaintiff's blood sugar has been well managed, and as a result, the frequency of his

9           glucose monitoring had been reduced.  However, due to Plaintiff's request, Defendant

10          Raman ordered the frequency to once a day.[55]

11   59.    Plaintiff was advised that the Physician and Chief Physician renew or deny an inmate's

12          chronos according to his medical needs, and that under Code of Regulations, Title 15,

13          § 3350 and 3354, inmates cannot demand a particular medication, diagnostic study or

14          course of treatment, because only licensed medical professionals can make these

15          decisions for the inmate.[56]

16   60.    Dr. Sanchez noted that following review of Plaintiff's Unit Health Record (UHR) and

17          careful consideration of his appeal, there was no evidence of deliberate indifference by

18          medical staff.[57]

19   61.    Plaintiff claims that CDCR staff confiscated his special shoes on or around December

20

21      [53]Plaintiff disputes this fact because he was not interviewed by Defendant Raman on March 20, 2006, and his 602 was not granted.

22      [54]Plaintiff disputes this fact because finger sticks are not complete medical care for a diabetic and Defendant
23   Raman told him that his medical chrono was being denied and reviewed the appeal.

24      [55]Plaintiff disputes this since he did not receive medical care he requested for his Type II diabetes and his blood sugar should have been monitored at each meal .

25      [56]Plaintiff disputes this alleging that only medically licensed medical providers can make medical decisions
26   and Defendant Raman was not licensed to provide HIV care from 2005 to 2007.

27      [57]Plaintiff objects to this fact as hearsay.  However, the appeal would be admissible under the business records exception to the hearsay rule.  Fed. R. Evid. 803(6).  Plaintiff's objection is overruled.

28

1    7, 2005, despite Plaintiff having a prior chrono from CMF for soft sole shoes due to his

2    Diabetes.[58]

3    62.    Defendant Rangel, and Associate Warden-Central Services, C. Gardemal, provided the

4           First Level of Review response to Plaintiff's appeal.[59]

5    63.    An interview with Plaintiff was conducted on February 27, 2006, which included a

6           review of his trust account activity, a check of the shoes that were "Stacey Adams"

7           brand, a review of his property file, a review of Operating Procedure (OP) 806 Inmate

8           Property Policies & Procedures (Issuance of Health Care Items), and a review of the

9           CDC 7410-Comprehensive Accommodation Chrono dated February 6, 2006.[60]

10   64.    The results of the review revealed that CSP-Corcoran Receiving and Release (R&R)

11          staff was in compliance with current policies and procedures in the confiscation of

12          Plaintiff's shoes.[61]

13   65.    R&R Officer J. Mora confiscated Plaintiff's claimed medical shoes because they were

14          not prescribed as a podiatrist medical shoe.[62]

15   66.    Defendant Rangel took Plaintiff's shoes to the specialty clinic and the prosthetic doctor

16          at that time indicated that Plaintiff's shoes were not medical-type shoes.[63]

17   67.    While Plaintiff might have had a prior chrono from CMF for soft-sole shoes, the shoes

18          confiscated from Plaintiff were not medical shoes— they were Stacey Adams brand

19

20   [58]Plaintiff disputes this fact stating that his shoes were orthopedic shoes and a medical appliance.

21   [59]Plaintiff objects to this fact as hearsay.  This statement is not hearsay and the objection is overruled.

22
     [60]Plaintiff disputes that the shoes were "Stacy Adams" brand shoes, the medical document only stated that
23   they were tan shoes.

24   [61]Plaintiff disputes this fact because R&R staff are not a party to this action and his shoes were taken by
     Defendant Rangel.

25
     [62]Plaintiff objects to this fact since this claim is not about the disposal of the shoes and Officer Mora is not a
26   party to this action.

27   [63]Plaintiff disputes this fact because the doctor who made this determination was a prosthetic doctor and not
     an "orthotic" doctor.

28

shoes that were not permitted.[64]

68. Moreover, a review of the CDC 7410 dated February 9, 2006, revealed that Plaintiff's request for a soft shoe chrono and to be authorized an "orthopedic shoe" was denied.[65]

69. Under California Code of Regulations, Title 15, § 3191(c), an inmate's property can be disposed of if an inmate does not have any funds in his trust account to mail the property, at the inmate's expense, to the address of an individual willing to accept the inmate's property.[66]

70. Plaintiff was provided with CDC 128-B (R&R mail-out notice to dispose of shoes) on or around January 22, 2006, and a CDC 193 (trust account withdrawal form).[67]

71. A review of R&R records revealed that Plaintiff did not have sufficient funds to mail out his shoes to the address he provided.[68]

72. Because Defendant Rangel is not a medical doctor or health care provider, he relied upon the determinations made by medical staff to ascertain whether Plaintiff was entitled to any special shoes, or whether the Stacey Adams shoes constituted orthopedic shoes.[69]

73. Plaintiff asserted in his deposition that he believes Defendant Raman had no right to change or revoke Dr. Aguilar's orders from CMF, where Plaintiff was housed before his transfer to CSP-Corcoran.[70]

---

[64]Plaintiff disputes this fact as his shoes were "orthotic" shoes for his medical condition.

[65]Plaintiff disputes that the medical chrono was not valid at the time his shoes were taken from him.

[66]Plaintiff disputes this fact because the regulation cannot violate the Fifth, Eighth, and Fourteenth Amendments.

[67]Plaintiff alleges he was "induced by coercion," without stating what he was induced to do.

[68]Plaintiff disputes this fact due to a violation of due process, however does not deny that funds were not available to mail the shoes.

[69]Plaintiff disputes that his shoes were Stacey Adams brand.

[70]Plaintiff disputes this fact because Defendant Raman was not Dr. Aguilar's supervisor and could not revoke his orders.

14

74. Plaintiff also claims that Defendants Solis and Johnson were required to follow Dr. Aguilar's orders—not Dr. Raman's.[71]

75. When questioned regarding his unwillingness to take his HIV medication twice a day, as explained to him by Defendants Raman and Solis, Plaintiff inexplicably stated that Defendant Raman was crazy and that he (Plaintiff) doesn't "take meds twice a day. We take the meds early in the morning and at night."[72]

76. Plaintiff testified that he understood Defendant Raman's instructions to mean that Plaintiff was to take his HIV medication in the morning, and then before the sun set at nighttime, which was not what Plaintiff wanted to do.[73]

77. Plaintiff also testified that he did not know Defendant Rangel prior to the incident involving the confiscation of his shoes.[74]

78. When asked if Plaintiff knew of any reason to believe that Defendant Rangel had a personal vendetta against him, he claimed that "every CDC officer in the system got a personal vendetta against inmates."[75]

79. Defendant Raman provided medical care to Plaintiff in accordance with acceptable medical standards, based on his evaluation of Plaintiff's medical needs.[76]

## V.   Deliberate Indifference to Medical Care

### A.   Legal Standard

---

[71]Plaintiff disputes this fact.

[72]Plaintiff disputes this fact because his afternoon medication was not brought until nighttime and Defendant Solis never said anything to him about how to take his medication.

[73]Plaintiff disputes this fact because it had nothing to do with what he wanted, the nurses did not bring the medication until nighttime.

[74]Plaintiff disputes this fact.

[75]Plaintiff disputes this fact stating that correctional officers are waging a domestic war against inmates in violation of their oath of office and allegiance to the United States Constitution.  "The whole world is aware of the combined illegal corporate activity sanctioned by higher authority to mistreat people."  (Opp. 34, ECF No. 99.)

[76]Plaintiff disputes that it was lawful for him to be denied of treatment for his HIV and diabetes and his "orthotic" shoes.

Liability under section 1983 exists where a defendant "acting under the color of law" has deprived the plaintiff "of a right secured by the Constitution or laws of the United States." Jensen v. Lane County, 222 F.3d 570, 574 (9th Cir. 2000).  In order to be held liable each defendant must have personally participated in the deprivation of the plaintiff's rights. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. Farmer, 511 U.S. at 837.

The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Conn v. City of Reno, 591 F.3d 1081, 1095 (9th Cir. 2010) (quoting Jett, 439 F.3d at 1096).  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837.  "Deliberate indifference is a high legal standard," Simmons, 609 F.3d at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm, Conn, 591 F.3d at 1095 (quoting Jett, 439 F.3d at 1096).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06.  "[A]

16

1  complaint that a physician has been negligent in diagnosing or treating a medical condition does not

2  state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does

3  not become a constitutional violation merely because the victim is a prisoner." <u>Estelle</u>, 429 U.S. at

4  106; <u>see also</u> <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1316 (9th Cir. 1995); <u>McGuckin v. Smith</u>,

5  974 F.2d 1050, 1050 (9th Cir. 1992), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>WMX Techs., Inc. v. Miller</u>, 104

6  F.3d 1133, 1136 (9th Cir. 1997)(en banc).  Even gross negligence is insufficient to establish deliberate

7  indifference to serious medical needs.  <u>See</u> <u>Wood v. Housewright</u>, 900 F.2d 1332, 1334 (9th Cir.

8  1990).   A difference of opinion between a prisoner and prison medical authorities as to proper

9  treatment does not give rise to a claim.  <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1355 (9th Cir. 1981);

10  <u>Mayfield v. Craven</u>, 433 F.2d 873, 874 (9th Cir. 1970).  Additionally, a difference of opinion between

11  medical providers regarding treatment does not amount to deliberate indifference.  <u>Sanchez v. Vild</u>,

12  891 F.2d 240, 242 (9th Cir. 1989).

13      **B.     <u>Discussion</u>**

14      Defendants argue that they are entitled to summary adjudication because the facts show that

15  they did not violate Plaintiff's rights under the Eighth Amendment and alternately, they are entitled

16  to qualified immunity.  Plaintiff received frequent and appropriate medical care.  While Plaintiff's

17  medications for HIV were withheld for a period of eighteen months, this was necessary because more

18  harm would have been caused by Plaintiff's improper ingestion of the medication.  Since Plaintiff

19  refused to take his medication twice a day, his "bizarre" interpretation of what twice a day entailed,

20  and his refusal to comply with requested blood testing, Defendants had no choice but to withhold his

21  medication to minimize serious medical harm.

22      Plaintiff was evaluated within days of arriving at CSP-Corcoran.  His medications were

23  evaluated and prescribed and he was referred to a dietician and the eye clinic.  From that time forward,

24  Plaintiff received ongoing  medical attention by Defendant Raman, who repeatedly explained to

25  Plaintiff that he needed to complete his lab work and comply with the HIV medication schedule to

26  participate in HAART.  Plaintiff consistently refused to comply.  Plaintiff has failed to offer anything

27  other than his own opinion as to his medical care, and Plaintiff lacks the medical expertise to offer an

28

1  opinion on the appropriateness of his treatment.  Plaintiff's difference of opinion between him and his

2  healthcare providers do not give rise to a claim under the Eighth Amendment.

3      Defendant Rangel was not deliberately indifferent to Plaintiff's medical needs by responding

4  to the appeal regarding the confiscation of Plaintiff's his shoes.  Plaintiff has offered no evidence that

5  the shoes were medically necessary.  Although Plaintiff contends that he had a medical chrono issued

6  by Dr. Aguilar at CMF for special shoes, medical staff at CSP-Corcoran are not precluded from

7  independently evaluating Plaintiff's medical needs and making a different diagnosis and order as

8  appropriate.  Defendant Raman was required to defer to Dr. Sanchez, who is not a defendant in this

9  action, and Dr. Sanchez denied Plaintiff's request for soft sole shoes.

10     Since Plaintiff did not have a valid medical chrono for the shoes, R&R staff's confiscation of

11  the shoes was appropriate.  Defendant Rangel was required to rely upon the medical decisions in

12  Plaintiff's medical records, and his response to the first level appeal was appropriate.  Plaintiff has not

13  demonstrated that Defendant Rangel acted inappropriately in his response to Plaintiff's appeal.

14     Plaintiff received extensive medical care and treatment and was repeatedly provided with

15  explanations of the importance of complying with the medication schedule.  Plaintiff's own

16  inexplicable and erroneous understanding of Defendants' explanations that he take his medication

17  twice a day does not provide basis for liability under the Eighth Amendment.  Additionally,

18  Defendants Solis and Johnson were required to comply with the physician's orders as well as CDCR

19  policy that required the medication be discontinued when Plaintiff refused to comply with the

20  medication schedule.  Therefore, Defendants argue they are entitled to summary judgment.

21     Alternately, Defendants are entitled to qualified immunity because they did not neglect Plaintiff

22  and reasonably believed he was receiving appropriate care.  Plaintiff was unhappy with the quality of

23  care he was receiving; however, the evidence shows that he received treatment on a regular and

24  continuing basis.

25     The Court finds that Defendants have met their initial burden of informing the Court of the

26  basis for their motion, and identifying those portions of the record which they believe demonstrate the

27  absence of a genuine issue of material fact.  The burden therefore shifts to Plaintiff to establish that

28

1    a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus., 475 U.S. at 586.

2         Plaintiff argues that since Defendants did not submit a point for point rebuttal in the answer

3    to the third amended complaint and in this motion, they have agreed to all facts alleged in the

4    complaint.[77] Plaintiff states that since Defendants denied his request for admissions, there are disputed

5    issues of fact.  Denying him medication to treat his HIV and insulin for his diabetes for eighteen

6    months constitutes deliberate indifference.  The evidence that he was denied this medical treatment

7    and that his shoes were taken away creates a triable issue.  The existence of the order by Dr. Aguilera

8    at the time his medical treatment was denied and that he had a medical chrono for two years prior to

9    being deprived of his shoes proves that Defendants were deliberately indifferent to his medical needs.

10   Something is "seriously wrong" with Defendant Ramen because he denied Plaintiff's medication

11   because he does not want to take two doses of medication a day. (Opp. 42, ECF No. 99.) Plaintiff told

12   Defendant Raman that he only took his medication once a day and only one at night.  (Id. at 45.)

13   Defendant Raman invalidated his medical chrono before it expired, and he did not request that it be

14   changed.  (Id. at 46.)  Plaintiff argues that the motion for summary judgment should be denied because

15   Defendants acted with intent to cause him harm, injury or death.[78]

16        Defendants reply that Plaintiff's opposition fails to do more than restate his personal lay person

17   opinions about his medical care and disagreement with the treatment he received.  Additionally,

18   Plaintiff's opposition does not comply with Local Rule 206(b) as he merely disputed each of their

19   undisputed facts with sporadic references to his complaint and deposition transcript, as well as false

20   accusations against Defendants and accusations of malfeasance by defense counsel.  Plaintiff has failed

21

22        [77]Initially, Plaintiff argues that the motion should be dismissed because he has not received any discovery
     from Defendants.  This is an issue that should have been addressed as a motion to compel, and the Court declines to
23   consider such in the instant motion.  Additionally, Plaintiff makes numerous references to the Commercial Code that
     are irrelevant to this action.

24
          [78]Plaintiff argues that his rights under the Americans With Disabilities Act and his First Amendment rights
25   have been violated.  Plaintiff may not now expand the scope of this litigation via his opposition to Defendants'
     motion for summary judgment.  See Gilmore v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004).
26   Plaintiff's claims are confined to those screened and found cognizable by the Court.  (ECF Nos. 33, 36.)  It appears
     that Plaintiff has copied multiple points and authorities from other cases that are irrelevant to this action and
27   submitted them as part of his opposition.

28

to meet his burden in opposing the motion for summary judgment as he has simply relied on unsupported conclusory allegations. Plaintiff's memorandum of points and authorities fails to cite any facts or supporting evidence and contains no legal analysis. There is no genuine disputed material fact. Plaintiff has failed to allege more than a disagreement with the treatment provided by his medical providers. Additionally, Defendants object to Plaintiff's exhibits attached to his opposition as they lack foundation, Plaintiff has failed to cite to them in his opposition, and they are irrelevant.[79]

While Plaintiff submitted a lengthy opposition with numerous exhibits, Plaintiff has set forth no evidence, other than his own assertions, that demonstrate that Defendants Raman, Johnson or Solis "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health or safety" during their treatment of Plaintiff for diabetes or HIV. Farmer, 511 U.S. at 837. Plaintiff may not rely on his own declaration and the allegations contained in his amended complaint. Nor may Plaintiff defeat a motion for summary judgment by questioning the credibility of the moving parties evidence. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (once the moving party demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-moving party to produce evidence sufficient to support a jury verdict). Plaintiff's own conjecture that he should have been treated with insulin rather than oral medication is insufficient to support his claim of deliberate indifference.

### 1. **Defendant Raman**

Plaintiff's HIV medication was discontinued after he failed to comply with the medication schedule. Plaintiff was seen for routine examinations to follow his medical conditions and his

---

[79]Defendants have objected to Plaintiff's exhibits B, C, D, E, H, J, P, and Q. Plaintiff has submitted, what appear to be form declarations, signed by several other inmates alleging they were denied medication. Defendants' objection to the declarations, Exhibits B, C, D, and E, will be granted as they are irrelevant to Plaintiff's claims in this action. Defendants also object to Exhibit H in which Plaintiff submitted medical chronos from 2002 through 20034 and miscellaneous property forms. Plaintiff's prior medical chronos and property receipt are potentially relevant and will be considered, however the documents issued in 2008 are irrelevant and Defendants' motion will be granted for exhibit H-4 and H-5.
    Exhibit J appears to be part of Plaintiff's complaint, therefore this evidence will be considered as it appears in the complaint. Exhibit P are medication reconciliations dated May 7, 2009 through September 9, 2010. Plaintiff has failed to establish a foundation for these documents. Additionally they are irrelevant to these incidents that occurred more than two years prior . Exhibit Q is an inmate appeal requesting copies of Plaintiff's medical records from October 2005 through 2010. This document is irrelevant. Defendants objection shall be granted for Exhibit P and Q.

1    treatment was discussed at each visit.  Plaintiff's medication was not reinstated because he indicated

2    that he would not comply by taking his medication twice per day and refused to allow laboratory

3    testing as directed by Defendant Raman.  Plaintiff alleges that Defendant Raman was deliberately

4    indifferent, however, the evidence submitted shows that Defendant Raman made the decision to

5    discontinue treatment because continuing Plaintiff's medication at an improper dosage would pose a

6    significant medical risk of building a resistance to the medication.  Plaintiff argues that he has never

7    been resistant to medication;  however, the issue is not whether Plaintiff was resistant, but that he

8    could become resistant to the medication.  Plaintiff has failed to submit evidence to show that

9    Defendant Raman's decision was not medically appropriate given Plaintiff's indication that he would

10   not comply with the physician's orders.

11          Plaintiff disputes that he made the statement that he would not take the medication twice a day.

12   He alleges that is was a misunderstanding by Defendant Raman that Plaintiff would not take his

13   medication two times per day.  Plaintiff states that he told Defendant Raman that he "only take[s] them

14   once a day, and only one at night."  (Opp. 45, ECF No. 99.)  However, to violate the Eighth

15   Amendment a defendant must act with deliberate indifference.  If Defendant Raman acted because of

16   a misunderstanding, he did not have the requisite state of mind in denying Plaintiff's request to be

17   placed back on the medication.  The evidence shows that Defendant Raman did not place Plaintiff on

18   the medication because he believed that Plaintiff could suffer more harm by failing to comply with the

19   medication regimen.

20          Plaintiff provides copies of his prior orders by Dr. Aguilar to show that he had been receiving

21   a medical chrono prior to being sent to CSP-Corcoran.  Plaintiff's attempts to establish deliberate

22   indifference by relying on the orders of Dr. Aguilar are also insufficient to support his claim of

23   deliberate indifference.  A difference of opinion between treating physicians does not amount to

24   deliberate indifference.  Sanchez, 891 F.2d at 242.  When Defendant Raman evaluated Plaintiff upon

25   his arrival at CSP-Corcoran, he determined that Plaintiff did not need to receive insulin for his diabetes

26   and changed Plaintiff to an oral medication.  While Plaintiff alleges that he should have been receiving

27   insulin and his blood sugars were too high, he submits no evidence supporting these claims.  The

28

medical records and declaration by Defendant Raman show that, other than an occasional high blood

sugar, Plaintiff's blood levels were under control and he was doing well on the medication.  Plaintiff

has failed to rebut the medical opinion offered by defendants with any competent evidence asserting

that the course of treatment provided was inappropriate for his medical condition.  See Jackson v.

McIntosh, 90 F.3d 3030, 330, 332 (9th Cir. 1996).

Finally, Plaintiff alleges that Defendant Raman invalidated his medical chrono, and his soft

sole shoes were taken away from him because of the change.  Plaintiff states that he never asked

Defendant Raman for a soft sole shoe chrono because he already had one; however, after Plaintiff

arrived at CSP-Corcoran, Defendant Raman submitted a request for approval of soft soled shoes for

Plaintiff.  The decision to approve or disapprove a medical chrono for soft sole shoes was made by Dr.

Silva.  Plaintiff has failed to show that Defendant Raman was involved in the decision to deny his soft

soled shoes or that the decision to deny his medical chrono for soft soled shoes was deliberately

indifferent.

The medical evidence shows that Plaintiff's medical conditions were routinely monitored and

his diabetes and HIV were well maintained and under control while he was housed at CSP-Corcoran.

(Dec. of Raman, ¶ 29, pp. 10-33.)  Plaintiff's disagreement with the course of the medical treatment

provided to him by Defendant Raman simply does not support a claim of deliberate indifference as

Plaintiff's lay opinion is insufficient to overcome the opinion of his treating physicians with regard to

his course of treatment.  Franklin, 662 F.2d at1355.

### 2.   **Defendants Johnson and Solis**

When Defendants Johnson and Solis did not dispense Plaintiff's medication because he had

refused to comply with the medication regimen, they were following the CDCR policy and physician's

orders.  Defendants Johnson and Solis were aware that failure to follow the prescribed dosage could

cause Plaintiff further harm by allowing him to build up a resistence to the medication.  Plaintiff has

not submitted any evidence that Defendants Johnson or Solis were deliberately indifferent to his

medical needs.

### 3.   **Defendant Rangel**

Finally, Plaintiff argues that Defendant Rangel was deliberately indifferent to his medical needs when he denied Plaintiff's inmate appeal after his shoes were confiscated.   The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing and denying inmate appeals cannot serve as a basis for liability under section 1983.  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993).  To establish liability for a defendant involved in the denial of his grievances, Plaintiff must set forth evidence that the shoes were medically necessary and the denial therefore constituted deliberate indifference to his medical needs.  See Toguchi, 391 F.3d at 1058-1060.  Plaintiff argues that the shoes that were confiscated were "orthotic shoes," his medical chrono allowed him to have them prior to being moved to CSP-Corcoran, and that Defendant Raman could not change the order made by Dr. Aguilar.  Although Plaintiff alleges that the shoes were taken by Defendant Rangel, Defendant Rangel did not originally confiscate the shoes; he processed Plaintiff's inmate appeal.

As previously stated a difference in opinion between treating physicians does not constitute deliberate indifference, and Plaintiff cannot rely on the prior order of Dr. Aguilar to establish deliberate indifference.  Sanchez, 891 F.2d at 242.  Plaintiff had a medical chrono at CMF allowing him to have a soft shoe, and his shoes were confiscated by R&R when he was transferred to CSP-Corcoran because they were not a prescribed podiatrist medical shoe.  Defendant Rangel reviewed and denied Plaintiff's first level appeal on February 28, 2006.  Defendant Rangel, as the first level reviewer, interviewed Plaintiff and reviewed all paperwork applicable to Plaintiff's complaint.  While Plaintiff argues that his shoes were not "Stacey Adams" brand shoes and they were allowed by the medical chrono, Defendant Rangel took the shoes to the specialty clinic where they were determined to not be a medical shoe.  Additionally, Defendant Rangel found that the request for a soft shoe chrono had been denied by CSP-Corcoran.  Defendant Rangel, who is not medical personnel, relied upon the determinations of medical staff in determining if Plaintiff was entitled to possess the shoes.  Defendant Rangel was not deliberately indifferent by denying Plaintiff's appeal because the specialty clinic determined that the shoes were not medical shoes, and Plaintiff did not currently have a chrono for soft

1    soled shoes at the time Defendant Rangel reviewed the appeal.

2    **VI.    Qualified Immunity**

3            Defendants' final argument is that they are entitled to qualified immunity.  Because the Court

4    recommends granting Defendants' motion based on the foregoing analysis, the Court does not reach

5    Defendants' argument that they are entitled to qualified immunity.

6    **VII.   Conclusion and Recommendation**

7            The Court finds that Defendants Raman, Johnson, Solis, and Rangel are entitled to judgment

8    as a matter of law on Plaintiff's claims that they violated the Eighth Amendment by acting with

9    deliberate indifference to Plaintiff's medical needs.  Accordingly, it is HEREBY RECOMMENDED

10   that Defendants Raman, Johnson, Solis, and Rangel's motion for summary judgment, filed January

11   7, 2011, be GRANTED.

12           These findings and recommendations will be submitted to the United States District Judge

13   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days

14   after being served with these findings and recommendations, the parties may file written objections

15   with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and

16   Recommendations."  The parties are advised that failure to file objections within the specified time

17   may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

18   1991).

19

20   IT IS SO ORDERED.

21   **Dated:    June 8, 2011**                       **/s/ Sandra M. Snyder**
22                                          UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28